UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,:
:
      Petitioner,       :
:
      v.                     :      Misc. Action No. 09- 564 (JMF)
:
BOEHRINGER INGELHEIM    :
PHARMACEUTICALS, INC.,    :
:
      Defendant.      :
:

**MEMORANDUM OPINION**

This matter was assigned to me for all purposes. Pending before me now is the Petition of the Federal Trade Commission for an Order Enforcing a Subpoena Duces Tecum [#1].[1] The Federal Trade Commission ("FTC") seeks an order from this Court declaring that the documents requested in its subpoena *duces tecum* are not privileged under the attorney-client privilege or the work product doctrine, as claimed by respondents, Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), and requiring the respondent to turn over the documents within 10 days of this order. In light of the record before me and for the reasons stated herein, plaintiff FTC's petition will be denied as to certain categories of documents as set forth below. For all others, BIPI will be ordered to redact privileged material and disclose the rest, if it has not already done so.

**I.    BACKGROUND**

The subpoena filed by the FTC is part of an investigation into a settlement agreement in a separate, prior lawsuit between BIPI and a generic drug manufacturer, Barr Laboratories. Memorandum in Support of Petition of the Federal Trade Commission for an Order Enforcing a

---

[1] The first reference to pleadings and other filings in this docket will include the name of the document and the docket number. All subsequent references to the same document will include the docket number only.

Subpoena *Duces Tecum* [#1-4] at 1-2. The investigation, in short, is looking into allegations that BIPI and Barr engaged in unfair trade practices. Id.

BIPI manufactures two brand-name drugs, Aggrenox and Mirapex. Id. at 4. Barr developed generic versions of these drugs and received FDA approval to market the generic versions, leading to litigation by BIPI alleging patent infringement. See Boehringer Ingelheim Inter. gmbH v. Barr Labs., 562 F. Supp. 2d 619, 622 (D. Del. 2008), rev'd Boehringer Ingelheim Intgern, gmbH v. Barr Labs., Inc., 592 F.3d 1340 (Fed. Cir. 2010). This action was consolidated with an action these plaintiffs later brought against Mylan Laboratories ("Mylan) seeking to enforce their rights in the Mirapex patents against Mylan. See [#1-4] at 4.

Marla S. Persky is Senior Vice President, General Counsel, and Secretary of Boehringer Ingelheim USA Corporation, Boehringer Ingelheim Corporation and BIPI. She attempted to settle the lawsuit pertaining to the Mirapex litigation, but the case proceeded to trial in the District of Delaware, where the court held that the Mirapex patents were invalid. Boehringer Ingelheim Inter. gmbH, 562 F. Supp. 2d at 640 (D. Del. 2008). Persky's clients pursued appeal in the Federal Circuit. Boehringer Ingelheim Intgern, gmbH., 592 F.3d at 1340. On January 25, 2010, the Federal Circuit reversed the lower court and remanded the case to the district court. Id.

In 2008, however, Barr and BIPI settled their disputes as to Aggrenox and Mirapex, and submitted the settlement to the FTC and Department of Justice, as required by law. [#1-4] at 5. The review of the settlement by the FTC led to the subpoena at issue here. The FTC opened a formal investigation in January 2009 to determine whether, via the settlement, the two parties had engaged in unfair methods of competition with respect to the sale of the two drugs and their generic counterparts. Id. The agreement provided that Barr could begin to market its generic versions only near the expiration of BIPI's patent, and that Barr would help promote BIPI's

product until it entered the market. Id.  This arrangement prompted the concern of the FTC that Barr agreed to delay marketing the generic versions of Aggrenox and Mirapex so as to allow BIPI to reap the sole profits, and in exchange, BIPI would "kick back" a portion of those profits to Barr. Id.

Shortly after the FTC investigation began, a subpoena was issued to BIPI, but BIPI did not comply with the deadline for production. [#1-4] at 5-6.  Pursuant to Sections 9 and 16 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 49, 56,[2] on October 23, 2009, the FTC filed this petition seeking enforcement of the subpoena. [#1].  Specifically, the FTC requested that the Court order BIPI to comply with the subpoena and turn over all relevant documents concerning the litigation between BIPI and Barr; sales, profits, and marketing of the brand-name drugs; the settlement agreement; co-marketing with Barr and other firms; the marketing of the generic substitutes by Barr; and analyst reports on the drugs. Id. at 5.  Between December 2009 and May 2010, there were disputes regarding the scope and adequacy of BIPI's search efforts.  In May 2010, however, BIPI formally certified that it had fully complied with the FTC subpoena.  See Status Memorandum Advising the Court of New Developments [#15] at 2.

The following month the FTC filed a status memorandum stating that BIPI's "limited custodial-based search did not locate all responsive materials." Federal Trade Commission's Status Memorandum Advising the Court of New Developments [#17].  The FTC also objects to BIPI's withholding of roughly 25% of its produced documents under claims of work product and attorney-client privilege. Id.

During a March 8, 2011 status conference, I directed the parties to meet and confer on a sample set of documents to be presented to me for *in camera* review.  I have reviewed BIPI's privilege log as well as the sampling of documents, which were created by BIPI in the period

---

[2] All references to the United States Code are to the electronic versions in Westlaw and Lexis.

between the District Court decision on June 26, 2008 and the settlement achieved on August 11, 2008.

The sample was chosen as representative of the 631 documents BIPI claims are privileged. The FTC, which has not seen the documents, insists that they are not protected, either because: 1) they are typical business forecasts not done by lawyers, and therefore not work product, or 2) the documents contain no confidential communications between client and attorney and do not qualify as protected by the attorney-client privilege. <u>Status Report of the Federal Trade Commission</u> [#41] at 1-2. Alternatively, the FTC argues that, even if the documents are privileged, the privilege is overridden by the FTC's substantial need for these documents in order to conclude its law enforcement investigation. <u>Id.</u> at 3.

Finally, the FTC claims that BIPI's eventual response to the subpoena was legally inadequate. <u>Id.</u> at 12-14. The FTC alleges that BIPI failed to preserve its electronic records and, as a result, responsive emails exist only on server back-up tapes, which BIPI refuses to search. <u>Id.</u> As a result, the FTC claims BIPI "has not conducted sufficient electronic searches of certain network folders, and instead relies on a custodian-based self-selection search process that the evidence indicates did not uncover many responsive documents." <u>Id.</u>

Therefore, two issues remain: 1) whether the documents claimed by BIPI to be protected under a privilege are, in fact, privileged; and 2) whether the scope and adequacy of BIPI's search is sufficient. I will address the former issue in this Memorandum Opinion. The latter will be addressed in a separate, forthcoming opinion.

## II.     LEGAL STANDARD

### A.     Application of the Federal Rules of Civil Procedure

Under the common law, on a petition to enforce an administrative subpoena, the court's role is limited to evaluating whether the subpoena is for a lawful purpose, whether the documents requested are relevant to that purpose, and whether the demand is reasonable.  See FTC v. Texaco, Inc., 555 F.2d 862, 872 (D.C. Cir. 1997) (en banc) (citing Endicott Johnson v. Perkins, 317 U.S. 501, 509 (1943) and Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 209 (1946)) (cert. denied, 431 U.S. 974 (1977)).  When the subpoenaed party is not challenging enforcement of the subpoena itself, but rather objecting to the disclosure of specific documents under a claim of privilege, the principles of the attorney-client privilege and the protection of work product privilege, derived from the common law and Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, apply.  See, e.g., U.S. v. Cal. Rural Legal Assistance, Inc., 824 F. Supp. 2d 31, 43-44 (D.D.C. 2011) (noting that enforcement of an administrative subpoena from a government agency may be limited by the federal attorney-client and work product privileges, rather than state privileges or ad hoc determinations).  "The nature of a subpoena enforcement proceeding, under common sense and precedents in this circuit and elsewhere, thus rests soundly in federal law, and federal law of privilege governs any restrictions on the subpoena's scope."  Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1513 (D.C. Cir. 1993).

In general, the Federal Rules of Civil Procedure apply to "proceedings to compel . . . the production of documents through a subpoena issued by a United States . . . agency under federal statute." Fed. R. Civ. P. 81(a)(5).  The work product doctrine set forth in Rule 26 therefore applies to a subpoena issued by a federal investigative agency prior to the contemplation of

actual litigation. That rule prevents against disclosure of "documents and tangible things prepared in anticipation of litigation or for trial by another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

Accordingly, I will address the FTC's claims and BIPI's assertion of privilege under the standards of Rule 26 and interpreting case law.

### B.   The Work Product Doctrine

"The work-product doctrine 'provides a working attorney with a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." Linde, 5 F.3d at 1515, (citing Coastal States Gas Corp. v. Dep.'t of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980)). It "undeniably extends to communications with 'one employed to assist the lawyer in the rendition of professional legal services.'" Id. at 1514 (internal quotations omitted). The work product doctrine is therefore broader in scope than the attorney-client privilege. Id. It protects against disclosure of not just communications, but also the "mental impressions, conclusions, opinions, or legal theories of an attorney." Id. See also Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 619 (D.C. Cir. 1997).

As I have said previously, the Rule's emphasis on documents prepared "in anticipation of litigation" contains two separate, yet related concepts – one temporal, the other motivational. Willingham v. Ashcroft, 228 F.R.D. 1, 4 (D.D.C. 2005). "In reviewing documents claimed to be protected by the work-product privilege, the court must determine 'whether, in light of the nature of the document or the factual situation in a particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" Banks v. Office of Senate Sergeant-At-Arms, 228 F.R.D. 24, 26 (D.D.C. 2005) (quoting Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs., 186 F.3d 959, 968 (D.C. Cir. 1999) (emphasis added)). Put

another way, "[t]o be protected by the work-product doctrine, a document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's interest in the successful resolution of that litigation.  Motivation is key." Banks, 228 F.R.D. at 26 (internal citations omitted).  See also United States v. Deloitte, 610 F.3d 129, 137 (D.C. Cir. 2010) ("Like most circuits, we apply the 'because of' test, asking 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (internal citation omitted).  Yet, if the documents in question would have been created in essentially the same form, irrespective of litigation, "it [cannot] fairly be said that they were created 'because of' actual or impending litigation." Willingham, 228 F.R.D. at 4 (citing United States v. Adlman, 134 F.3d 1194, 1202-03 (2d Cir. 1998)).

If a party can show that the documents were developed because of ongoing litigation, they are not discoverable absent the requesting party's showing that their need for the documents is substantial and that they are unable to obtain the substantial equivalent of the materials by other means without suffering "undue hardship." Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997).  Even when the requesting party can meet this burden, only "factual" work product will be disclosed; "opinion" work product, which reveals the mental processes or impressions of an attorney or his or her agents, will still receive the utmost protection. Upjohn Co. v. United States, 449 U.S. 383, 400 (1981); Dir., Office of Thrift Supervision, 124 F.3d at 1307 ("Opinion work product . . . is virtually undiscoverable."); Nesse v. Pittman, 202 F.R.D. 344, 350 (D.D.C. 2001) ("[E]ven if the work-product privilege yields to a showing of need, the court must still protect absolutely the "mental impressions,

conclusions, opinions or legal theories of an attorney."). Where the factual and opinion work product are so intertwined in a document that it is impossible to segregate and disclose the purely factual part, any disclosure would violate the protections afforded by the work product doctrine since, in that case, the entire document discloses the mental impression of an attorney or her agent. In re Vitamins Antitrust Litig., 211 F.R.D. 1, 5 (D.D.C. 2002) (holding that if the court were to find "that the attorney's mental impressions are so thoroughly intertwined with factual information that the entire memoranda should be treated as work product, the [materials] cannot be produced.").

### C. Attorney-Client Privilege

In this Circuit, the attorney-client privilege applies only to communications from a client to an attorney made in confidence for the purpose of securing legal advice. Jinks-Umstead v. England, 231 F.R.D. 13, 15 (D.D.C. 2005); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 200, 204 (D.D.C. 1998); Evans v. Atwood, 177 F.R.D. 1, 3 (D.D.C. 1997) (citing Tax Analysts, 117 F.3d at 617). The privilege also extends "to communications from attorneys to their clients if the communications rest on confidential information obtained from the client." Tax Analysts, 117 F.3d at 618 (internal quotations omitted). This includes communications made by employees of a client in response to the client's attorney's request for information for the purposes of rendering legal services to the client. Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 1, 3 (D.D.C. 2004). The attorney-client privilege and the work product doctrine often go hand-in-hand: "Because the work-product and attorney-client privileges operate independently of each other, the application of either will act to shield from production those documents for which both privileges are claimed." Nesse, 202 F.R.D. at 348. Documents that are protected by the attorney-client privilege are thus absolutely privileged as is opinion work product. Factual work product

8

yields, however, to a showing of substantial need and the inability to secure the materials by other means without undue hardship.

**III. ANALYSIS**

The FTC takes issue with several categories of documents for which BIPI asserted claims of privilege: 1) the financial analyses of a co-promotion agreement regarding Aggrenox; 2) forecasting analyses of possible time lines for the generic drug to enter the market; 3) financial analyses of the business terms of the settlement agreement; and 4) notes taken by business executives. [#41] at 3.  The FTC claims an overriding and compelling need for disclosure of these categories. Id.  It also insists that attorney-client privilege claims regarding business documents that had no attorney as an author or recipient, or included an attorney only as part of a distribution to business executives, must be rejected. Id.

Having reviewed the documents *in camera*, I will now address the merits of BIPI's claims of privilege.  I have sorted the different documents into four broad categories, and will address each in turn.

### A. Analyses of Co-Promotion Agreement, Forecasting Analyses, and Financial Analyses Used to Evaluate Potential Settlement Options

Many of the documents for which BIPI claims a work product privilege are described in the privilege log using the labels in the title of this sub-section.  BIPI claims that these analyses were prepared not in the ordinary course of business, but for the specific purpose of informing counsel whether the proposed BIPI-Barr settlement offers should be accepted. Tr. of Status Hearing of 12/9/11 [#59] at 20.  BIPI concedes that financial projections and analyses are frequently conducted, even absent ongoing or contemplated litigation, but contends that the specific financial analyses at issue before the Court do not fall into this category. Id. at 22.

Rather, says BIPI, they were specially prepared at the request of counsel in response to litigation, and are therefore work product. Id.

Indeed, BIPI contends that it already turned over more than 270,000 pages of documents, including projections and financial analyses that *were* prepared in the ordinary course of business. [#59] at 22; 27-28.  Attorneys for BIPI further argue that, even though the analyses in question were prepared by non-lawyers, the documents are still protected by attorney-client privilege or the work product doctrine because the analyses were premised on frameworks provided by Persky and were prepared for her use. Id. at 27-28.  BIPI therefore requests that I hold each of the documents provided for *in camera* review to be privileged, and thus, not subject to disclosure.  See Response of Boehringer Ingelheim Pharmaceuticals, Inc. to the Federal trade Commission's Status Report [#44] at 2.

With regards to the analyses specific to the Aggrenox co-promotion agreement, the FTC claims that agreement was "distinct from the settlement agreement," [#41] at 4, meaning it was not prepared for the BIPI-Barr litigation, and therefore cannot qualify for work product protection because the co-promotion was not even a part of the litigation.  BIPI, on the other hand, claims that, while the co-promotion agreement was "freestanding," in that it constituted a separate business arrangement, the terms of the co-promotion agreement were indeed part of the litigation settlement and the two processes informed one another. [#44] at 4.  BIPI asserts that the co-promotion agreement arose during the settlement discussions and, in fact, was part of the settlement. Id.

After reviewing these documents, the status reports and oppositions, and affidavits accompanying the *in camera* submissions, I agree that the co-promotion agreement was an integral part of the litigation.  Hence, disclosure of the attorneys' and their agents' mental

processes qualify for protection since the process of deciding whether to settle a case is necessarily created because of the prospect of litigation. I credit the declarations of Persky and Pamela M. Taylor, partner at Jones Day, the firm representing BIPI in the FTC investigation, that the various financial analyses were prepared for the client during settlement discussions and involved discussions among the attorneys and their agents who were handling the settlement negotiations. The documents themselves establish the truth of Persky's claims in her affidavit that the documents were created by BIPI or Boehringer Ingelheim employees in response to her personal requests for financial and other information. This was information she needed in order to provide her client, BIPI, with legal advice regarding the potential settlement between BIPI and Barr. Information used to assess settlement option clearly falls within the ambit of the work product doctrine. See Willingham, 228 F.R.D. at 4. Consequently, these documents are work product and thus protected.

Although the FTC is correct in its assertion that similar reports are prepared for BIPI executives as a matter of regular business, the specific reports as to which BIPI claims the privilege were prepared using information and frameworks provided by BIPI attorneys, and constitute work product intended to aid these attorneys in the settlement process. Moreover, BIPI insists any freestanding non-litigation-based financial analyses were already disclosed to the FTC, meaning that the only additional information the documents at issue would yield is the mental thought processes of BIPI's attorneys as they prepared for settlement negotiations. Having reviewed the documents themselves, I find that BIPI is correct—these documents were prepared for counsel and were not business forecasts made in the ordinary course of business.

### B. The FTC's Overriding and Compelling Need for the Analyses

In the event that I found, as I just have, the various financial analyses to be work product, the FTC argues that the documents must be disclosed due to its overriding and compelling need for them to complete the administrative investigation. [#41] at 9-11. The documents, according to the FTC, and the documents cannot be obtained in any other way. Id. at 10.  The FTC believes these materials are vital to the FTC's investigation, and objects to BIPI's use of them as both a sword (to claim their business deal was a fair transaction) and a shield (using claims of privilege to prevent anyone from looking into the validity of such a claim). Id. at 9-10.

I hold that this argument fails on two accounts.  First, as described above, a showing of substantial need is not sufficient to merit disclosure of opinion work product.  Having reviewed the documents, I find that the factual inputs cannot be reasonably segregated from the analytical outputs.  Hence, a disclosure of any aspect of the financial analyses would necessarily reveal the attorneys' thought processes regarding the BIPI-Barr settlement.  The reports in question were prepared at the behest of BIPI attorneys, who requested that certain data be entered and manipulated to determine whether various settlement options were beneficial to BIPI.  Revealing the data chosen for this analysis would necessarily reveal the attorneys' mental impressions, including, at a bare minimum, that the attorneys believed such analyses of that data was necessary or important to determining an appropriate settlement.  Where the factual work product cannot reasonably be excised from the opinion work product, the claim of privilege must be upheld and the request for production denied.

Second, after reviewing these documents *in camera*, I cannot agree that there is an overriding need on the side of the FTC.  From my review, there are no smoking guns contained in these documents; rather, they are the sort of financial analyses one would expect a company

exercising due diligence to prepare when contemplating settlement options. They yield nothing more than the arithmetical calculations of various potential scenarios and are not in any way evidence of any conspiratorial intent to violate the law. They also do not cast any light on the fundamental legal issue of whether the deal was or was not anti-competitive in intendment or result. No one is pretending that the FTC is not fully aware of the deal that was made or of the economic benefits the deal makers were trying to achieve. The arithmetic of various potential scenarios adds nothing to what is already known about what the involved companies intended in settling their suit. Although I am sympathetic to the FTC's argument that these financial analyses are the only documents that could demonstrate whether or not BIPI was using the co-promotion agreement to pay Barr not to compete, I am afraid that they cast no light of whether that intendment existed. I therefore cannot find that the FTC has shown the requisite need for this work product that is generally considered to be "virtually undiscoverable." <u>Dir., Office of Thrift Supervision</u>, 124 F.3d at1307.

      The privilege log should be sufficient to convey to the FTC the contents of the e-mails transmitting the above-mentioned reports, and no further disclosure should be necessary. For the purposes of ruling on the *in camera* submission, I have grouped these transmittal e-mails together under Category D in the attached Appendix. If the e-mails contain additional, factual work product that can be reasonably excised from any indication of opinion work product, as discussed above, the e-mail may be redacted as to the latter and disclosed, if BIPI has not done so already. If no segregation is possible, the transmittal e-mails will fall under the same privilege that applies to the documents themselves, which are grouped in the Appendix under Category A.

    **C. E-mails, Notes, and Correspondence Regarding Strategic Decisions, Settlement Possibilities, and Settlement Options, Including Correspondence Between Executives**

Like the above-mentioned categories of documents, the documents under this heading represent various types of communications (including e-mails, handwritten notes, and other correspondence) all discussing the different settlement possibilities or specific options that were on the table for BIPI.  Again, I hold that they, too, are protected by the work product doctrine and are not subject to disclosure insofar as these documents contain the mental processes and opinions of BIPI attorneys and their consultants.

Some of these documents include correspondence and other materials circulated principally between executives, rather than between attorneys and executives, for which BIPI has claimed an attorney-client privilege.  To this, the FTC objects that the attorney-client privilege or work product doctrine cannot exist between non-attorneys. Federal Trade Commission's Reply Status Report [#47] at 5.  BIPI claims that these documents were either prepared during discussions with counsel or as part of the work performed at counsel's request. [#44] at 8.  It also claims that 1) at least 76 of the 102 documents involving non-lawyers explicitly state that they are confidential or prepared at the direction of counsel, and 2) that an additional 64 are directed to an attorney, admittedly among other recipients, and include requests for legal advice. Id. at 11-12.  The documents themselves indicate, however, that they were intended to be confidential communication between the client, BIPI, and its attorneys.  They are thereby protected by the work product and attorney-client privileges because they disclosed confidential communications between attorney and client and were prepared during the settlement phase of the litigation.  The documents submitted for *in camera* review deserving of this protection are listed in Category B in the Appendix.

### D. E-mails Reflecting Requests for Legal Advice or Conveying Requests From Attorneys for Information To Be Used in Settlement Negotiations

A third category of documents encapsulated by the heading above poses a different issue – the attorney-client privilege on its own.

An example of the FTC's issue with this category of documents is document #724. BIPI asserts attorney-client privilege over this document because it reflects a request by in-house counsel, Bruce Banks, for information that would help inform BIPI in drafting its co-promotion agreement with Barr. Declaration of Pamela L. Taylor, submitted *in camera*, at 39. The FTC takes issue with this on the grounds that the communication was between two non-lawyers, and thus cannot be considered protected by the attorney client privilege. However, communications among employees of a client are still afforded the protection of the privilege, so long as the communications concern legal advice sought or received that was intended to be confidential. See, e.g., Long v. Anderson Univ., 204 F.R.D. 129 (S.D. Ind. 2001) (e-mails between one university employee and another regarding communications with counsel were privileged); Johnson v. Sea-Land Serv. Inc., No. 99-civ-9161, 2001 WL 897185, at *2 (S.D.N.Y. Aug. 9, 2011) (holding that the privilege "affords confidentiality to communications among clients, their attorneys, and the agents of both, for the purpose of seeking and rendering an opinion on law or legal services, or assisting in some legal proceeding, so long as the communications were intended to be, and were in fact, kept confidential.").

I therefore hold that all e-mails conveying a request for or the provision of legal advice are protected by the attorney-client privilege. Out of the documents submitted for *in camera* review, this would include document #1599, which was already provided in redacted form with the privileged material excised; and document #724, described above.

Some documents contain an entire string of e-mails being sent back and forth, in which the correspondence addresses legal strategies, proffers of advice, or potential avenues for the settlement. Document #2190 is such a chain, and as such, it is privileged in its entirety. However, in instances where there are multiple e-mails in a single string, and only one of those e-mails contains privileged material, the privileged component may be excised but the remainder of the e-mail string must be disclosed. I hope that the parties will find this consistent with my treatment of the transmittal e-mails described in section II.A, *supra*. For example, document #1318 contains multiple e-mails back and forth among several groups of people, with only the final e-mail indicating a request for legal advice. In instances such as this, only the specific e-mail that is privileged may be withheld or redacted; the rest must be disclosed.

Finally, there was one e-mail chain where it was unclear on its face whether BIPI's attorneys' advice was sought on a confidential issue. Document #2896 is an e-mail string concerning BIPI's media response about the approval by the FDA of the Barr generic. <u>Declaration of Pamela L. Taylor</u>, submitted *in camera*, at 36. In the last e-mail, Paula Wittmayer, an attorney with BIPI's in-house counsel, simply says: "Here were my edits to the last version." It is impossible to tell from the e-mail chain whether her views were sought as to a legal issue, or whether her edits were merely typographical and grammatical. One cannot say, therefore, that her client sought legal advice by a confidential communication. Therefore, the claim of privilege fails as to this e-mail chain and others where confidential communication is not intended.

There is also a set of documents provided for my review that are duplicates or near duplicates of other documents already provided. These documents are listed in category E in the Appendix, and should be handled in the same manner as the documents they duplicate.

I appreciate that there may be documents at issue in this case which may not fit neatly into one of the categories described above. As the FTC noted in its recent request for a status conference on this issue, the debate about these documents has gone on for too long. I hope to avoid a protracted and unnecessary back-and-forth as to each of the 600-plus documents still in question. We shall proceed as follows. BIPI should make a rolling production of non-privileged documents at no less than 100 documents a day until the production is completed. BIPI must disclose, in redacted form, all correspondence containing factual, rather than opinion, work product, if it has not already done so. However, all financial analyses prepared for the BIPI-Barr litigation, including for the Aggronex co-promotion agreement, are deemed privileged, as discussed above, and not subject to disclosure.

I will hold counsel for BIPI strictly to the obligation imposed by Rule 26(g) of the Federal Rules of Civil Procedure and expect the redactions it makes to be not a word more than is necessary to protect a privilege. If that is not done, I will sanction BIPI counsel and, at a minimum, BIPI will forfeit its privilege to that document. If I detect a pattern of a failure to comply with the obligations I am imposing, I will consider forfeiting the privilege as to all remaining documents.

I hope by doing this to provide the FTC with the gist of the document despite the redaction being made so that it can conscientiously and reasonably decide whether any additional battle over the document is truly necessary. Demanding a document that, even as redacted, is innocuous and does not really advance its investigation may lead to similar consequences for the FTC, and, again, if a pattern emerges, I will consider upholding the privilege as to all remaining documents. I ask only that the parties be reasonable and devote only that amount of time to this controversy that is truly proportionate to what is now at stake.

If all else fails, BIPI will submit the disputed documents to me for *in camera* review and I will resolve them summarily and as quickly as I can.

My ruling as to the specific documents submitted for *in camera* review is set forth in the attached Appendix.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

# APPENDIX A

## Documents submitted for *in camera* review

| | CATEGORY | DOCUMENTS | | | RULING |
|---|---|---|---|---|---|
| A) | Presentations and documents regarding overview of litigation, options available, and/or estimated financial impact of various options for settlement; financial analyses of both the co-promote agreement and various settlement options; summaries of settlement discussions | 3328<br>1365<br>1366<br>1367<br>1368<br>2921<br>1396<br>1397<br>1344<br>900/901/902<br>2364<br>2918/2919<br>2920/2921 | 928<br>1291<br>1580<br>1984<br>617<br>2250<br>1040/1041<br>1381<br>2364<br>810/811<br>832/833<br>973<br>1290 | 1947<br>233<br>790[3]<br>791<br>2333<br>2387<br>1057/1058<br>1004<br>992<br>2495<br>2946<br>2550<br>2578/2580<br>2983/2984<br>3058 | These documents are protected by the work product and/or attorney client privilege, and are not subject to disclosure. |
| B) | E-mails, notes, and reports containing:<br>• strategic decisions<br>• proposed settlement options and terms<br>• delegation of responsibilities<br>• analysis from executives, prepared for counsel, conveying mental impressions of counsel or strategy for litigation | 780/781<br>621<br>574/575/576<br>729<br>1007/1008 | 927/928<br>1516[4]<br>2547<br>2540<br>859<br>891<br>1016/1017 | 821<br>1947<br>1093<br>3415[5]<br>1001 | These documents are protected by the work product and/or attorney client privilege, and are not subject to disclosure. |

---

[3] A redacted version of this document was already produced.

[4] It appears from the face of this document that it is notes taken during a conversation with an attorney. If that is the case, and these notes reflect the contents of that conversation, the notes would be privileged. As it is difficult to determine definitively whether or not this is the case, with regards to this document, I instruct BIPI to supplement the privilege log to indicate where and in what context these notes were taken.

[5] The report attached to this e-mail exchange was already produced. The e-mail itself is privileged and does not need to be disclosed.

| | | | | | |
|---|---|---|---|---|---|
| C) | Requests for legal advice or e-mails containing legal advice or opinions | 1599<br>1318 | 2190<br>724 | 2896[6] | Any emails related to requests for or the provision of legal advice need not be produced and may be redacted if part of a larger e-mail chain (e.g., 1318). Chains not containing any confidential communications between attorneys for BIPI and BIPI employees must be disclosed in full. |
| D) | E-mails transmitting privileged documents, where the e-mail itself contains no little or privileged material | 3327<br>1364<br>2917<br>3057<br>1343 | 1395<br>616<br>1039<br>1308 | 1868<br>699<br>1000<br>2945 | BIPI should redact opinion work product, if any, from these e-mails and disclose the rest to the FTC. |
| E) | Near duplicates of documents falling into the above categories, for which the FTC requested *in camera* review | 1955, duplicating 576/1041<br>908, duplicating 617<br>1415 and 693, duplicating 859<br>861 duplicating 833<br>860, 844, and 1996 duplicating 832<br>1341, 815, 819, 1333, and 858 duplicating 2580 | | | Disclosure of these near-duplicates should mirror my holdings on the original documents. |

---

[6] This exchange was already produced with virtually all the content redacted. As discussed in this Memorandum Opinion, however, the contents of the e-mail do not indicate whether or not the material is protected by the attorney-client privilege, as claimed. It must therefore be disclosed in full.