UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION, :
                          :
        Petitioner,       :
                          :
     v.                   :        Misc. Action No. 09-564 (JMF)
                          :
BOEHRINGER INGELHEIM      :
PHARMACEUTICALS, INC.,    :
                          :
        Defendant.        :

**MEMORANDUM OPINION**

This matter was assigned to me for all purposes. Before me is the remaining issue in the Petition of the Federal Trade Commission for an Order Enforcing a Subpoena *Duces Tecum* [#1]. I resolved the privilege issues presented in that petition and subsequent status reports in my recent Memorandum Opinion [#69]. Federal Trade Commission v. Boehringer Ingelheim Pharmaceuticals, Inc., No. 09-564, 2012 WL 4464490 (D.D.C. Sept. 27, 2012). I will now turn to the FTC's argument that Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") did not conduct an adequate search of its electronically stored information because it refused to search back-up tapes in accordance with the subpoena's demands.

**I.     Background**

BIPI first filed the executed settlement agreements from the Barr-BIPI litigation[1] with the Department of Justice and the Federal Trade Commission in August of 2008. Response of Boehringer Ingelheim Pharmaceuticals, Inc. to the Order to Show Cause [#34] at 5. Five months later, on February 9, 2009, the FTC served BIPI with the subpoena at issue in this case. Id. BIPI

---

[1] For an explanation of the background of the FTC's investigation and the subpoena at issue here, see [#69] at 1-4.

responded to the subpoena by initiating a custodian-directed search, "whereby the inside legal department and outside counsel [were directed to] review the subpoena, identify potentially relevant custodians, ask them about their files, gather potentially responsive files both in electronic and hard copy as appropriate, and review the fruits of the search." Id.  BIPI also "instituted a document preservation notice for persons who were deemed likely to have any responsive documents," which included placing responsive e-mails in a "hold file" to be "retained indefinitely until the legal hold is lifted." Id. at 5-6.  BIPI identified "over 66 employees" who received the document preservation notice. Id. at 7.

The e-mail system used by BIPI "automatically deleted emails from its employees' in-boxes 90 days after the email was sent or received," and the FTC argues that this automatic deletion feature was not turned off once the subpoena was served. Reply of the Federal Trade Commission In Further Support of Status Memorandum Advising the Court of New Developments [#33] at 19.  The FTC also complains that some relevant e-mails were inappropriately deleted manually or otherwise lost. Id. at 20.  As a whole, argues the FTC, BIPI's efforts to retain documents through manual archiving of relevant e-mails was not sufficient to prevent all relevant e-mails from being deleted under the 90-day automatic deletion program. Id.  Consequently, the FTC requests a search of the back-up tapes "due to the document preservation obligations in this investigation and other litigations." Id.

Originally, the FTC requested that BIPI search "all of Boehringer's Electronically Stored Information," including backup tapes and servers dating back to 2003.  See [#1] at 8-12.  BIPI, however, maintains that the "disaster recovery backup tapes . . . do not separate [] working documents such as spreadsheets, documents, PowerPoints, and other types of materials . . . [n]or are they easily segregable by author or custodian." [#34] at 20-21.  As such, BIPI estimated that

a search of all the backup tapes from January 2003 to October 2010 would cost over $25 million dollars. Id. at 21.  This estimate did not include the cost of searching hard drives, which also fell under the FTC's request that BIPI search "all" databases and archives. Id. at 19-20.  During oral argument, however, the FTC conceded that it is "willing to forgo the F&G drive at this point, in favor of the backup tapes." See Transcript of Status Hearing [#59] at 70.  The FTC also noted that the relevant period for which backup tapes must be searched is February through August, 2008, [#59] at 70, and that a search of four tapes would be sufficient, rather than the 24 originally subpoenaed, id. at 52.

Despite the concessions at oral argument, the FTC retains its position that BIPI did not conduct an adequate search of its records, in that it declined to search any server back-up tapes for responsive documents.  See Status Report of the Federal Trade Commission [#41] at 12-13.  BIPI, on the other hand, contends that it has done a full and thorough search and that the FTC's request for additional electronic searches remains "unnecessary and unduly burdensome." Response of Boehringer Ingelheim Pharmaceuticals, Inc. to the Federal Trade Commission's Status Report [#44] at 13.

Fueling this disagreement is a debate among the parties regarding the standard of review for the FTC's request.  The FTC asserts that its request for a search of the backup tapes should be analyzed under the standards of FTC v. Texaco, Inc., 555 F.2d 862 (D.C. Cir. 1977). [#41] at 13.  BIPI, on the other hand, points to the "good cause" standard set forth in Federal Rule of Civil Procedure 26(b)(2)(B). [#44] at 13.  This opinion, therefore, must resolve two distinct issues: 1) what law governs requests submitted via administrative subpoena to search information stored on backup tapes; and 2) whether BIPI should be required to conduct a search of the backup tapes, and, if so, under what terms.

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 26(b)(2)(B), "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). If the producing party can make such a showing, the court may "nonetheless order discovery from such sources if the requesting party shows good cause." Fed. R. Civ. P. 26(b)(2)(B). It follows, therefore, that the court will not consider a requesting party's "good cause" unless the producing party has first met her burden of showing "undue burden or cost."

In the administrative subpoena context, however, a much stronger showing of "undue burden" is required. See Texaco, 555 F.2d at 882. When evaluating an administrative subpoena enforcement petition, the court should enforce the subpoena "if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." Id. at 872 (citing United States v. Morton Salt Co., 337 U.S. 632, 665 (1950)). See also Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1517 (D.C. Cir. 1993) ("The burden of proving undue hardship 'is not easily met where . . . the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose.'").[2]

To that end, to reject a petition to enforce an administrative subpoena, this Circuit requires a showing that compliance with the subpoena "threatens to unduly disrupt or seriously hinder normal operations of a business." Texaco, 555 F.2d at 882. "The burden of showing that the request is unreasonable is on the subpoenaed party." Id. This does not mean the Court's

---

[2] While the Texaco decision antedated the amendment to the Federal Rules that created what is now Rule 26(b)(2)(B), in this jurisdiction, the Court must construe the words "undue burden" in the Rule consistently with the Texaco decision, if the Texaco decision is to be given the precedential force to which it is entitled.

hands are tied to the exact terms of the subpoena request; indeed, "in formulating protective conditions for administrative subpoenas, courts may resort analogously to techniques conventional to judicial subpoenas." Sec. & Exch. Comm'n v. Arthur Young & Co., 584 F.2d 1018, 1033 (D.C. Cir. 1978) (citing the Federal Rules of Civil Procedure as one such technique).

**III.    Analysis**

There is no doubt that the breadth of the search requested in the FTC's original subpoena would have consumed much of BIPI's time and money. Many of the status updates and other submissions to the Court on this issue addressed whether the search, as requested, constituted an undue burden on BIPI. Although both sides raised interesting arguments in this regard, the request as it stands today is on a different scale. Developments between the parties, both on their own and before me during the last status conference, indicate that the scope of the search requested by the FTC has been narrowed significantly, and as a result, it appears that the request is, in its modified form, not unduly burdensome for BIPI. See Texaco, 555 F.2d at 882-83.

I am not convinced, having reviewed the status reports of both the FTC and BIPI, that such a limited search would be the kind of burden upon BIPI described in the Texaco case—"threaten[ing] to unduly disrupt or seriously hinder normal operations of a business." Texaco, 555 F.2d at 882. BIPI bears the burden of establishing such a disruption and it has not demonstrated to the Court, either through filings or during the November 2011 status conference, that complying with this request, as modified, would meet that burden. Instead, "some burden on the subpoenaed party is to be expected." Federal Trade Commission v. Church & Dwight Co., Inc., 747 F. Supp. 2d 3, 8 (D.D.C. 2010), aff'd 665 F.3d 1312 (D.C. Cir. 2011). BIPI is a large pharmaceutical company, and, although it does not have unlimited resources, it certainly has the ability to conduct the limited search requested here.

More to the point, the burden or lack thereof in doing the search is a function of how efficiently it is conducted.  Obviously, to the extent that documents found on the backup tapes are duplicative or near-duplicative of documents already disclosed or deemed privileged, production is unnecessary and unwarranted.  The parties should meet and confer to determine the appropriate method of searching the relevant backup tapes to render the process as efficient as possible.  Additionally, if they deem it appropriate, I will ask the mediator who assisted them previously to meet with them again to guide their discussions as to how to conduct the search.  If the parties still cannot agree, they will have to submit their disagreement to me for resolution.

Additionally, any documents produced by this search and claimed to be privileged will be subject to the same principles and holdings laid out in my recent opinion in this case.  <u>See Memorandum Opinion</u> [#69].  Thus, to the extent that the documents produced in the backup tape search fall under the work product or attorney-client privileges, as I have interpreted them in that opinion, they would be protected from disclosure.  Searching for them again would result in a needless expenditure of resources.

Any documents found on the backup tapes that are responsive and not privileged must be turned over immediately.  As stated previously, however, if a document contains some factual work product and some opinion work product, and the opinion work product can be excised from the rest of the document, BIPI should redact the privileged material and disclose the rest.  If, at the end of this process, there remains a dispute as to whether any of these documents may be privileged, they may be submitted to me for *in camera* review.

An Order accompanies this Memorandum Opinion.

                                                                    _____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE