UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **FEDERAL TRADE COMMISSION** | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. 09-mc-564 (GMH) |
| **BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.** | ) ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION

Over seven years ago, the Federal Trade Commission ("FTC") petitioned this Court for an order instructing Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") to comply with a subpoena to produce documents for an ongoing FTC investigation. Following a decision from this Court, an appeal to and remand from the D.C. Circuit, and another decision from this Court consistent with the D.C. Circuit's guidance, Boehringer now moves to stay the Court's most recent Order "until all appeals, including any appeal to the United States Supreme Court, have been resolved." Resp. Mot. [Dkt. 109] at 2. Boehringer's Motion to Stay Production of Privileged Documents Pending Appeal is now ripe for adjudication. Based on a review of the relevant submissions[1] and for the reasons set out below, Boehringer's motion for a stay is hereby **DENIED**.

---

[1] The relevant documents for purposes of this Memorandum Opinion are as follows: (1) Respondent's Motion to Stay Production of Privileged Documents Pending Appeal ("Resp. Mot.") [Dkt. 109]; (2) Petitioner's Memorandum in Opposition to Respondent's Motion to Stay ("Pet. Resp.") [Dkt. 112]; and (3) Respondent's Reply to Petitioner's Opposition ("Resp. Reply") [Dkt. 113].

## BACKGROUND

The relevant facts underlying these proceedings are more fully described in the Court's prior opinions and in the decision of the Court of Appeals. *See FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 286 F.R.D. 101, 104–06 (D.D.C. 2012) ("*Boehringer I*"), *aff'd in part*, *rev'd in part*, *and remanded*, 778 F.3d 142 (D.C. Cir. 2015); *FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142, 146–48 (D.C. Cir. 2015) ("*Boehringer II*"); *FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 180 F. Supp. 3d 1, 6–16 (D.D.C. 2016) ("*Boehringer III*"). The Court will provide only the important background information here.

### A. Boehringer-Barr Litigation and the FTC Subpoena

The FTC filed this action to enforce an administrative subpoena *duces tecum* directed at Boehringer for an FTC investigation of a settlement agreement in a patent lawsuit between Boehringer and a generic drug manufacturer, Barr Laboratories ("Barr"). *See* Memorandum in Support of Petition to Enforce Subpoena [Dkt. 1–4] at 1–2. The FTC hopes to learn whether Boehringer and Barr violated antitrust laws. *Id.* In the subpoena, the FTC seeks documents from Boehringer relating to the patent litigation, the settlement of that litigation, and other agreements between Boehringer and Barr entered into at the time of settlement. *Id.* at 5–6.

To summarize, Barr developed generic versions of two drugs that Boehringer manufactures, Aggrenox and Mirapex, and Boehringer sued Barr for patent infringement. *See Boehringer Ingelheim Int'l GmbH v. Barr Labs.*, 562 F. Supp. 2d 619, 622 (D. Del. 2008), *rev'd* 592 F.3d 1340 (Fed. Cir. 2010). After Boehringer lost at trial but won on appeal before the Federal Circuit, the parties agreed to settle the case and submitted their settlement to the FTC. *See Boehringer I*, 286 F.R.D. at 105. During the course of the lawsuit, Marla S. Persky, the Senior Vice President and General Counsel of Boehringer, helped advise her client on the settlement agreement. *Id.*

After the settlement, the FTC opened a formal investigation to determine whether Boehringer and Barr had engaged in unfair methods of competition through their settlement and other agreements. *Id.* The FTC was specifically concerned that Barr agreed to delay marketing its generic drugs, thereby giving Boehringer a monopoly on profits for a time, in exchange for a payoff from Boehringer using those sales. *Id.* To aid in its investigation, the FTC served a subpoena on Boerhringer for documents concerning: (1) the patent litigation; (2) sales, profits, and marketing of the brand-name drugs; (3) the settlement agreement; (4) co-marketing with Barr and other firms; (5) Barr's marketing of the generics; and (6) analyst reports on the drugs. *Id.*

### B. *Boehringer I* and *II*

After Boehringer reported that it had fully complied with the subpoena, the FTC filed an objection, noting that Boehringer had withheld many relevant documents under claims of work-product protection and attorney-client privilege. *Id.* at 106. The FTC identified four categories of documents that it believes Boehringer improperly withheld: (1) financial analyses of a co-promotion agreement between Boehringer and Barr regarding Aggrenox; (2) forecasting analyses of possible timelines for Barr's generic drug to enter the market; (3) financial analyses of the business terms of the settlement agreement; and (4) notes taken by business executives. *Id.* at 108. The FTC argued that it had "an overriding and compelling need" for disclosure of these documents and that the attorney-client privilege did not apply to them because they were "business documents that had no attorney as an author or recipient, or included an attorney only as part of a distribution to business executives." *Id.* In response, Boehringer provided a sample set of documents for the Court to review *in camera* and also submitted *in camera* and *ex parte* affidavits from attorney Persky and attorney Pamela Taylor, who represents Boehringer in the FTC investigation. *Id.* at 109.

3

After examining those documents, this Court issued a decision sustaining in part and overruling in part Boehringer's assertions of privilege. With respect to the financial analyses of a co-promotion agreement between Boehringer and Barr on Aggrenox, forecasting analyses regarding Barr's generic drug, and financial analyses used to evaluate the settlement agreement, the Court concluded that these documents were "an integral part of the litigation" and that information used to assess settlement options "clearly falls within the ambit of the work product doctrine." *Id.* Further, the Court determined that these documents constituted opinion work product, which enjoys stricter protection than fact work product, and that the FTC could not discover them. *Id.* at 110. The Court also examined a number of emails, notes, and correspondence regarding strategic decisions and settlement options, concluding that they were protected as opinion work product. *Id.* Finally, the Court examined a number of emails reflecting requests for legal advice or conveying requests from attorneys for information to be used in settlement negotiations. *Id.* at 111. Though not protected by the work-product doctrine, the Court determined that these communications were shielded from disclosure by attorney-client privilege. *Id.*

The FTC then appealed this Court's decision with respect to the financial analyses of the co-promotion agreement, the forecasting analyses regarding Barr's generic drug, and the financial analyses used to evaluate the settlement agreement. *Boehringer II*, 778 F.3d at 147. The D.C. Circuit affirmed the Court's finding that the co-promotion agreement was prepared "in anticipation of litigation" and agreed that the vast majority of the co-promotion materials qualified as work product, but reversed the Court's decision with respect to a small body of co-promotion documents prepared after the settlement agreement was executed – a temporal distinction which this Court failed to address. *Id.* at 146. The D.C. Circuit also reversed this Court's decision on the issue of whether these documents were fact or opinion work product, finding that this Court incorrectly

4

"implied that an attorney's mere request for a document was sufficient to warrant opinion work product protection" and noting that the FTC had already demonstrated the requisite substantial need to discover the documents under the fact-work-product standard. *Id.* at 152, 157–58. Accordingly, the D.C. Circuit remanded the matter for further consideration of how many of the documents constituted fact work product that should be produced to the FTC. *Id.* at 158. The D.C. Circuit also observed that, "[t]o the extent that any such documents were withheld in whole or in part on the alternative basis of attorney-client privilege, the District Court will have to determine whether this privilege independently bars discovery." *Id.*

Following the D.C. Circuit's decision, Boehringer filed a petition for a rehearing *en banc*, arguing that the original three-judge panel erred in its interpretation of work-product protection. *See* Petition for Rehearing *En Banc*, *Boehringer II*, 778 F.3d 142 (D.C. Cir. 2015) (No. 12-5393). After the D.C. Circuit denied Boehringer's petition for a rehearing *en banc*, Boehringer filed a motion to stay the proceedings before the D.C. Circuit remanded the matter, arguing that the Circuit's decision created a circuit split that required Supreme Court review and that a refusal to grant a stay may result in Boehringer producing documents later determined to be protected work product. *See* Motion to Stay Mandate, *Boehringer II*, 778 F.3d 142 (D.C. Cir. 2015) (No. 12-5393). In a brief *per curiam* order, the Court of Appeals denied Boehringer's request for a stay. Shortly thereafter, Boehringer appealed the D.C. Circuit Court's underlying decision to the Supreme Court, arguing again that it created a circuit split, an erroneously strict standard for what constitutes opinion work product, and an erroneously lax standard for what constitutes substantial need for discovery of fact work product. *See* Petition for Writ of Certiorari, *Boehringer Ingelheim Pharmaceuticals, Inc. v. FTC*, 136 S. Ct. 925 (2016) (No. 15-560), 2015 WL 6668470. The Supreme Court denied Boehringer's petition, bringing the matter back to this Court. *See Boehringer*, 136 S. Ct. 925 (2016).

### C. *Boehringer III*

On remand, the Court reconsidered Boehringer's objections to the FTC's subpoena using the D.C. Circuit's decision as a guidepost. *See Boehringer III*, 180 F. Supp. 3d at 15–35. After denying Boehringer's request for leave to file another *in camera* and *ex parte* affidavit from attorney Persky, the Court concluded that "the vast majority of the documents at issue on remand constitute fact work product" subject to discovery by the FTC. *Id.* at 25. While the Court directed Boehringer to produce some of these documents, it also concluded that all the documents for which Boehringer also claims attorney-client privilege are protected. *Id.* at 28–35. Accordingly, the Court instructed Boehringer to produce a selection of documents that qualify only as fact work product, and to produce any previously unproduced documents similar to those identified as discoverable in its decision – that is, documents for which work-product protection and not attorney-client privilege was claimed. *Id.* at 35.

### D. The Parties' Cross Appeals

After issuing its decision, this Court extended the deadline for Boehringer to begin producing documents to November 29, 2016, at Boehringer's request. *See* Order [Dkt. 106] at 2. On November 23, 2016, the FTC filed a notice of its appeal of this Court's decision to the D.C. Circuit. *See* Notice of Appeal [Dkt. 107]. Shortly after, Boehringer gave notice that it was cross-appealing this Court's decision. *See* Notice of Cross Appeal [Dkt. 108]. On appeal, the FTC challenges this Court's finding as to attorney-client privilege, while Boehringer challenges the Court's finding as to fact-work-product protection. *See* Resp. Mot. at 1. Those appeals are currently pending before the D.C. Circuit Court, and Boehringer now requests that this Court's instruction to produce the documents in question be stayed pending its appeal's full resolution.

**LEGAL STANDARD**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Indeed, "[a] stay is not a matter of right . . . [,] [i]t is instead an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. The movant can satisfy that burden by showing that the balance of the following four factors weigh in favor of a stay: (1) the likelihood that the party will prevail on the merits of the appeal; (2) the likelihood that the party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *See, e.g.*, *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 988, 990 (D.D.C. 2006).

The movant "does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm)." *McCammon v. United States*, 588 F. Supp. 2d 43, 47 (D.D.C. 2008); *see also Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 973 (D.C. Cir. 1985) ("A stay may be granted with either a high probability of success and some injury, or *vice versa*."). Indeed, these factors are "evaluated on a 'sliding scale,'" meaning "a strong showing of one factor may excuse a relatively weak showing on another." *FTC v. Church & Dwight Co., Inc.*, 756 F. Supp. 2d 81, 83 (D.D.C. 2010); *see also Akiachak Native Community v. Jewell*, 995 F. Supp. 2d 7, 12 (D.D.C. 2014) (explaining that courts in the D.C. Circuit continue to evaluate motions to

stay using a sliding-scale analysis).  Generally, however, "[a] showing of irreparable harm is crucial."  *Id.* at 86.  "For harm to be 'irreparable' – that is, for legal remedies after the fact to be inadequate to restore the party seeking a stay if the stay is not granted – the injury must be both certain and great[.]"  *Church & Dwight Co., Inc.*, 756 F. Supp. 2d at 86; *see also Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 97 (D.D.C. 2011) ("[L]egal remedies after the fact must be inadequate to restore the party seeking a stay to the status quo ante.").  After all, "granting a stay pending appeal is always an extraordinary remedy, and the moving party carries a heavy burden to demonstrate that the stay is warranted."  *Philip Morris,* 449 F. Supp. 2d at 990.

## DISCUSSION

In weighing the four factors enumerated above, the Court finds that Boehringer's Motion to Stay Production of Privileged Documents Pending Appeal [Dkt. 109] should be denied.  Specifically, the Court finds that Boehringer has demonstrated a very low likelihood of success on the merits of its appeal, and has an adequate remedy even if this Court's decision is overturned by the D.C. Circuit.

### A.     Boehringer's Likelihood of Success on the Merits

Boehringer asserts that it "has good-faith arguments that both this Court's opinion and the D.C. Circuit precedent it was based upon should be modified on appeal." Resp. Mot. at 4.  Specifically, Boehringer maintains that the D.C. Circuit's decision in *Boehringer II* remanding the matter back to this Court was made in error and conflicts "with better reasoned analyses from other courts of appeals."  *Id.* (citing cases from the Second, Seventh, and Tenth Circuits).  Boehringer asserts that many of the documents the Court ordered it to produce should be protected as opinion work product, or, alternatively, that the documents are fact work product but the FTC has not demonstrated a substantial need for them.  *See* Resp. Reply at 7.  Even if the D.C. Circuit disagrees with

8

its arguments, Boehringer concludes, the circuit split and potential for chilled work-product protections based on *Boehringer II* makes this case a "serious contender" for a grant of certiorari from the Supreme Court. Resp. Mot. at 4.

While the Court does not doubt that Boehringer makes these arguments in good faith, the years of largely unsuccessful litigation over Boehringer's work product claims weigh heavily in favor of denying its motion for a stay now. As the FTC rightly observes, two years ago, both the D.C. Circuit and the Supreme Court rejected the same points Boehringer seeks to argue again on appeal. In order for Boehringer to succeed now, either the D.C. Circuit will have to reverse *Boehringer II* after having already denied Boehringer's request for rehearing *en banc* in 2015, or the Supreme Court will need to grant certiorari after having already denied Boehringer's similar petition in 2016. Indeed, the specific arguments Boehringer currently raises to support its motion for a stay – that *Boehringer II* created a circuit split that calls for guidance from the Supreme Court and improperly relaxed the showing required to demonstrate substantial need for the production of fact work product – were raised in Boehringer's initial petition for a writ of certiorari that the Supreme Court denied. *See* Petition for Writ of Certiorari, *Boehringer Ingelheim Pharmaceuticals, Inc. v. FTC*, 136 S. Ct. 925 (2016) (No. 15-560), 2015 WL 6668470. Based on that record, the Court finds that Boehringer's present appeal, seemingly duplicative of its previous unsuccessful efforts before the D.C. Circuit and Supreme Court, has little likelihood of success on the merits.

**B.    Likelihood that Boehringer Will Be Irreparably Harmed Absent a Stay**

With respect to this factor, Boehringer claims that, should it be compelled to produce the subpoenaed documents and the D.C. Circuit later determines they were protected by work product privilege, there would be no way "to make [it] whole" again. Resp. Mot. at 2. Though a court can forbid the FTC from relying on privileged documents in any subsequent proceeding, Boehringer

9

contends that any future decision by the FTC to bring an action may still be informed, at least in part, by the knowledge gleaned from its improper review of work-product-protected material. *See* Resp. Reply at 4–5.

While Boehringer's concern is not without foundation, it largely misses the mark as it is based on a false premise: that a lower court's order should be stayed unless there exists a complete remedy if the order in question is later reversed on appeal. In fact, "[t]he key word in this consideration is irreparable . . . . The possibility that *adequate compensatory or other corrective relief* will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958) (emphasis added). Boehringer will have an adequate remedy in the unlikely event its appeal succeeds – an order vacating this Court's decision and directing that the FTC destroy the documents in question and make no use of them in its investigation.

The Supreme Court found in *Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100 (2009), that such an order was adequate to address the same concerns raised by Boehringer here. In *Mohawk*, the Supreme Court's rejected the petitioner's claim that, "absent immediate appeal" under the collateral order doctrine of a trial court's compelled disclosure of petitioner's purportedly attorney-client-privileged material, the attorney-client confidences at issue would be "irreparably destroyed." *Id.* at 108. In rejecting that claim, the Court concluded that a post-judgment remedy was sufficient to protect the petitioner's rights, even in the face of the disclosure of the purported privileged material to the petitioner's adversary pending an appeal following judgment. *Id.* at 108–09. According to the Court,

> post-judgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for

10

>     a new trial in which the protected material and its fruits are excluded from the evidence.

*Id.* Surely, if a post-judgment remedy is sufficient to address a challenge to a trial court's improper disclosure of documents protected by attorney-client privilege, it is adequate to correct Boehringer's claimed violation of work-product protection in the off chance its appeal succeeds here. *See Church of Scientology of California v. United States*, 506 U.S. 9, 16 n.9 (1992) (citing cases for proposition that compliance with improper FTC subpoenas can be addressed on appeal by court order instructing return of documents and destruction of any records derived from them); *FTC v. Gibson Products of San Antonio, Inc.,* 569 F.2d 900, 903 (5th Cir. 1978). In the meantime, "protective orders are available to limit the spillover effects of disclosing [any] sensitive information" in Boehringer's documents. *Mohawk*, 558 U.S. at 112; *see also*, *United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162, 165, 170 (D.D.C. 2014) (ordering that "confidential" information contained in alleged attorney-client and work-product materials be protected by the recipient of the materials, given that holder of the privilege was seeking "mandamus relief with the Court of Appeals").

As Boehringer notes, the D.C. Circuit has recently expressed skepticism about the capacity of a post-appeal remedy to address the harm associated with the disclosure of certain attorney-client-privileged documents, explaining that "post-release review of a ruling that documents are unprivileged is often inadequate to vindicate a privilege the very purpose of which is to prevent the release of those confidential documents." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014). The D.C. Circuit distinguished *Mohawk* by explaining that, while holding that attorney-client privilege rulings are not appealable under the collateral order doctrine, the Supreme Court also recognized that an interlocutory mandamus petition remained "a 'useful safety valve' in some cases of clear error to correct 'some of the more consequential attorney-client privilege rulings.'" *In re Kellogg*, 756 F.3d at 761 (quoting *Mohawk*, 558 U.S. at 109–12). To the extent that

Boehringer seeks to drawn some rough equivalency between that statement in *Mohawk* regarding mandamus and its request for a stay pending appeal, that effort fails. Boehringer's appeal does not seek to correct a "clear error" in a "consequential attorney-client privilege ruling[]." *Mohawk*, 558 U.S. at 112. Rather, it asks the D.C. Circuit to overturn a decision concerning work-product protection, using arguments that have already been considered and rejected by either the Court of Appeals or the Supreme Court. No "safety valve" is warranted here.

Again, in the unlikely event that Boehringer's appeal succeeds, the injury it identifies – that the FTC's review of the documents in question may, in some way, impact its decision to bring an enforcement action at the conclusion of its investigation – is not immune to adequate corrective relief. Should the D.C. Circuit disagree with this Court's decision and its own previous ruling regarding the production of these documents, it can issue an order directing that the FTC destroy the documents in question and make no use of them in its investigation. Further, in that scenario, Boehringer would be free to argue[2] that the FTC's investigation was tainted by its review of the documents, and that the attorneys and investigators who accessed the documents should be disqualified from further proceedings. *See Church & Dwight Co., Inc.*, 756 F. Supp. 2d at 86–87; *see also S.E.C. v. Nicita*, 2008 WL 170010, at *4 (S.D. Cal. Jan. 16, 2008) (addressing argument, following the production of allegedly attorney-client privileged documents, that the "SEC's investigation is already hopelessly tainted by the privileged material" and that all relevant SEC attorneys and investigators should be disqualified). In this sense, as this Court has previously observed, "it is the FTC who, by insisting on enforcement pending appeal, is rolling the dice" by "run[ning] the risk

---

[2] Boehringer's judicially-compelled production of these documents will not constitute waiver of its claim of work product privilege. *See Equity Analytics, LLC v. Lundin*, 248 F.R.D. 331, 334 (D.D.C. 2008) ("[A] judicially compelled disclosure of otherwise privileged information is not a waiver of any privilege that could be claimed.").

that its investigation will be irreparably tainted" if this Court erred in its previous decision. *Church & Dwight Co., Inc.*, 756 F. Supp. 2d at 87.

In any event, the Court finds that Boehringer will have an adequate remedy available to it in the unlikely event its appeal succeeds.

### C. The Prospect that Others Will Be Harmed if the Court Grants the Stay, and Where the Public Interest Lies

The remaining two factors are of little help to either party. While cognizant of the FTC's need to continue as expeditiously as possible in a proceeding that has now lasted over seven years, *see FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977), the Court observes that the completion of its investigation likely hinges, at least in part, on a ruling on its own appeal of this Court's attorney-client privilege decision. Moreover, the D.C. Circuit has already set a briefing schedule on the parties' cross appeals, and the parties' final briefs are due no later than June 30, 2017. Thus, the Court finds that the balance of harms rests in equipoise.

Similarly, as to the public interest, Boehringer rightfully asserts that "the public has a strong interest in [the] fair and consistent application of legal privileges." Resp. Reply at 6. But the public also has a strong interest in the FTC "fulfilling its statutory command to investigate, and then prevent, anti-competitive activity that raises the prices that citizens must pay for the goods they purchase." *Church & Dwight Co., Inc.*, 756 F. Supp. 2d at 87. Accordingly, the Court concludes that the public interest does not militate either in favor of or against a stay.

### CONCLUSION

For the reasons stated above, the Court will deny Boehringer's Motion to Stay Production of Privileged Documents Pending Appeal [Dkt. 109]. However, the Court will stay Boehringer's compliance with the Court's September 27, 2016 Memorandum Opinion and Order pending it seeking a stay in the D.C. Circuit, and the Circuit's consideration of any such request. Boehringer

has until March 22, 2017 to seek such a stay.  Absent it doing so on or before that date, Boehringer must immediately comply with this Court's September 27, 2016 Memorandum Opinion and Order.

An appropriate Order will accompany this Memorandum Opinion.


Date:  March 15, 2017                              _____
                                                                         G. MICHAEL HARVEY
                                                                         UNITED STATES MAGISTRATE JUDGE